PALEY et al. v. BETHLEHEM STEEL CO.

Civ. A. No. 51–427.

United States District Court
D. Massachusetts.

June 19, 1953.

Perne Henninger and Thomas J. Byrne, of New York City, Clifford H. Byrnes, Hale, Sanderson, Byrnes & Morton, of Boston, Mass., for plaintiff.

Arthur Raisch, of Detroit, Mich., Clarence D. Kerr and William J. Barnes, of New York City, and Hector M. Holmes, Fish, Richardson & Neave, Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is a suit for infringement of Reissue No. 22,091 granted to Nicholas Rippen and entitled "Sheathing System". Four claims are in issue. Two of these, claims 10 and 11, relate to the method employed, and the remaining two, claims 12 and 13, relate to resulting structural combinations.

Rippen's asserted invention relates to a system for fastening wooden deck planks to steel decks of ships by means of fasteners welded to the steel decks while the wooden planks are in position.

Long before Rippen, wooden planks had been used as a sheath for steel decks. The earliest way to fasten the planks was to drill holes into the deck and into the planking, and to insert bolts through the holes and then to screw nuts on the bolts. This method was unsatisfactory because water leaked through the holes, and also the deck was somewhat weakened.

To meet the first of these defects, the cap screw method was developed. The deck was not pierced by holes; instead holes were drilled part way through the deck, the holes were threaded, and cap screws were used as fasteners.

In 1926 Niesener British Patent 249,788 developed a new method. As the first step in this method a wooden planking is perforated. Then it is laid on the deck as a template to locate the position for the bolts. Next the plank is removed, and, at the appropriate positions, each bolt is manually fillet arc welded to the deck with a consummable electrode. That is, a consumable electrode is moved around the external circumference of the bolt so that weld metal is deposited only in the corner formed between the outer face of the bolt and the deck. After the bolts have been welded to the deck, the plank is replaced and nuts are screwed onto the deck.

The problem to which Rippen addressed himself was an improvement of Niesener. He sought a method of manually fillet arc welding the planking to the deck without charring or removing the planking during the welding operation. Rippen recognized that under the prior art the difficulty with manually welding studs into the deck while the planking was on the deck was that the welding heat would char, or burn away, the perimeter of the holes in the plank, and then there would be nothing which the

fasteners could grip to secure the plank to the deck. Thus Rippen states in lines 12 et seq., column 1 of his patent:

"In my wooden sheathing invention, if thin welding-walls are used or if the sheathing is constituted of soft lumber, those sheathing-portions which adjoin the fastening means, under certain conditions, will be charred by the welding-heat, thus partially or entirely defeating their function as retaining mediums between the sheathing and the sheathed member."

From this quotation it may justly be inferred that Rippen contemplated fasteners which would coact with the portion of the wooden plank immediately adjacent the weld. He sought to prevent charring of what, under his method, is the critical portion of the plank adjacent the bottom of the hole. And the type of fasteners which he envisaged were hollow fasteners welded internally by manual arc welding. All four of the claims here in issue show on their face that they were premised on the foregoing expectations.

In claim 10 Rippen claims the method of inserting through each of the holes in the planking the fastener which is to be welded, and "employing a welding heat liable to harmfully affect the sheathing", but "insulating the sheathing from the harmfulness of said heat during the welding by the utilization of an intervening space extending through at least a substantial portion of the length of the welded member," and finally securing the planking to the deck by a coaction of the pair of fastening members to cause a securing effect in at least a portion of the perimeter of the hole.

Claim 11 instead of relying on an intervening space to insulate the sheathing, depends on "placing a heat-resisting material between said inserted member and the walls of the through-perforation in said sheathing to insulate the sheathing from the harmfulness of heat during the welding."

Claim 12 refers to a combination of the sheathed metallic member, the sheathing, and the welded fastener deposited on the metallic member, and this claim states that the welded fastener should be "spaced from the wall of the through opening through-out at least the major portion of the length of the holding member to obviate charring of said" planking.

Claim 13 refers to a similar combination. However, it depends not only on the fastener or holding member being "spaced from the wall" of the planking "throughout at least the major portion of the length of the holding member," but also on the "heat-resisting means in said space effective to obviate charring."

It is not necessary to decide whether these claims constitute patentable inventions, for (in view of the numerous issues raised regarding the validity of Rippen's patent) it is far simpler to dispose of this case by considering whether defendant infringes these claims.

Defendant uses a commercial method and a Navy method in securing wood decking to the steel deck of its ships.

In defendant's commercial method, the plank is laid on the deck, drilled and counterbored, removed for greasing, and replaced. In the welding operation, defendant uses a Nelson stud welding gun. The gun is provided with a spring chuck into which a solid stud is inserted. The gun is also provided with a ferrule-holding tube into the end of which a ceramic ferrule is positioned. The welding gun is connected into a welding circuit, and is passed into the hole in the wood planking to bring the stud and ferrule in contact with the deck. The operator pushes the trigger switch; the current flows through the welding circuit of which the stud is a part; the gun retracts the stud from the deck about one-eighth of an inch to strike an arc. This arc continues for about one-quarter of a second; whereupon the control unit automatically opens the electric circuit, and then the spring of the gun plunges the stud into the weld metal, which solidifies and securely welds the stud to the deck. Thereafter the nut is turned down on the stud to clamp together the plank and deck, and the hole is plugged with a wooden plug.

In defendant's Navy method, the plank is laid on the deck, and drilled and counterbored before the studs are welded by the procedure just described. Afterwards the

plank is removed, and other steps not here material are taken.

Defendant's methods are derived from the method of "Cyc-Arc" welding developed shortly after World War I by three British inventors, Steele, Martin, and McCarthy. See Steele, et al., British Patent 134,393. Under their disclosure a stud is put on the chuck of a welding gun which is acted upon in one direction by a solenoid and in the opposite direction by a spring, closing the electric welding circuit through the metal plate and the stud to be welded thereto, and simultaneously closing the circuit through the solenoid, to separate the stud from the plate to strike an arc, which is allowed to continue for a time, and then opening the solenoid to allow the spring to plunge the stud against the plates and thus weld it. This substitution of studs end welded by the Cyc-Arc method was specifically intended to apply to fittings on ships' decks. Moreover, Steele, et al., patent 1,410,421 page 2, line 51 recognizes that "a shield may be provided for protecting the arc * * * from air currents. This may be effected by enclosing the stud-holder and arc in a suitably insulated casing which may be * * * if desired of refractory material."

In both the Cyc-Arc method and defendant's methods the weld arc endures only briefly. In defendant's structure the maximum is one-quarter of a second. This is so short a time that no charring of any consequence occurs. There is, thus, an absence of that type of "welding heat liable to harmfully affect the sheathing," to which the claims here in issue are addressed. No contrary inference can be drawn from defendant's use of a ferrule. Defendant uses a ferrule not to guard against a harmful charring of the wood, but as a mold to retain the weld metal in position when the stud is rammed down to the deck, and to protect the weld metal from the air. This latter use of the ferrule was appreciated not by Rippen, but by his predecessors, Steele et al., when they spoke of a shield protecting the arc from air currents.

Incidentally, under defendant's methods even if (which is not the case) there were a risk of charring the plank in the area of the weld, this would not matter. Under defendant's methods the nut coacts with the shoulder of the counterbore at a point about two inches above the deck where the weld occurs. The situation is unlike the one with which Rippen dealt, for there the manual arc welding is performed near that part of the plank which coacts with the fastener to secure the plank to the deck. Thus Rippen presents a different structure and a different problem than defendant's structure.

In summary, this Court holds that defendant's structure, relying as it does on the 1922 Cyc-Arc method of welding studs, does not involve any risk of materially charring the wood plank, and that defendant's structure in using a ferrule as a mold and protector against the wind does not infringe Rippen's claims 10, 11, 12, and 13 all of which are addressed solely to the problem of enabling those using the manual fillet arc welding method to avoid the effect of harmfully charring wooden planks at the places where they are intended to be effectively retained.

Decree to be entered for defendant.